**AMERICAN MANAGEMENT SYSTEMS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 01–586C.

United States Court of Federal Claims.

Aug. 30, 2002.

F. Whitten Peters, Williams & Connolly LLP, Washington, D.C., attorney of record for plaintiff, Brendan V. Sullivan, Jr., John G. Kester, Judith A. Miller, Janet C. Fisher, Williams & Connolly, of counsel, C. Stanley Dees, Thomas C. Papson, McKenna & Cuneo, L.L.P., of counsel.

Robert E. Kirschman, Jr., with whom were Assistant Attorney General Robert D. McCallum, Jr., Director David M. Cohen, Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., for defendant, Elizabeth S. Woodruff, Federal Retirement Thrift Investment Board, of counsel.

### OPINION

WIESE, Judge.

Plaintiff, American Management Systems, Inc., entered into a contract with the Federal Retirement Thrift Investment Board ("the Thrift Board") for the design and development of an automated record-keeping system for the Thrift Savings Plan. The Thrift Board later terminated the contract for default. Plaintiff seeks review of that decision which it claims was improper.

The case is currently before the court on defendant's motion to dismiss the complaint for lack of jurisdiction. Defendant contends that the Thrift Board is a non-appropriated fund instrumentality, *i.e.*, a governmental activity whose operations are conducted without the benefit of congressionally provided public funds, and, therefore, an activity whose contracts may not be litigated in this court. Plaintiff opposes defendant's motion.

The court heard oral argument on defendant's motion on August 27, 2002. At the conclusion of the argument, the court entered a bench ruling in plaintiff's favor. This opinion explains more fully the bases for that ruling.

### I.

*The Thrift Savings Fund*

The Thrift Board is an independent agency established within the Executive Branch of the federal government by the Federal Employees' Retirement System Act of 1986

("FERSA"), Pub.L. No. 99–335, 100 Stat. 514 (codified, as amended, at 5 U.S.C. §§ 8351 and 8401–79 (2000)). The Thrift Board is responsible for managing the assets of the Thrift Savings Fund ("the Fund"), a special tax-deferred savings account created under FERSA for the benefit of federal employees and members of the uniformed services. §§ 8437, 8472.

The assets of the Fund derive from several sources: (i) voluntary contributions from participating employees under § 8432(a); (ii) contributions from employer agencies on behalf of employees covered by the Federal Employees' Retirement System (which include either mandatory contributions of one percent of basic pay for employees who elect not to contribute to the Fund pursuant to § 8432(c)(1), or, in the case of participating employees, matching contributions not to exceed a specified percentage of each employee's basic pay under § 8432(c)(2)(B)); (iii) assessments against employing agencies for the purchase of fiduciary insurance pursuant to § 8479(b)(1); and (iv) net investment earnings under § 8437(b).

The monies in the Fund are held in trust for the benefit of its participants, § 8437(g), and, except as specifically provided by statute, may not be used for or diverted to purposes other than for the exclusive benefit of such participants, § 8437(e)(1).

*The Contract*

In May 1997, the Thrift Board awarded plaintiff a contract for the design, development, and implementation of an automated record-keeping system. The system was intended to simplify and improve the Thrift Board's services to the Fund's participants and beneficiaries.

Plaintiff's proposal envisioned a system based on the integration of two commercial, off-the-shelf products, OmniPlus and Federal Financial System. OmniPlus is produced by SunGard Business Systems, Inc. and is designed to manage defined contribution pension plans. Federal Financial System, by contrast, was designed by plaintiff as a generalized accounting system meeting the financial reporting requirements of the federal government. The contract work was scheduled to be completed 38 months from the date of contract award, *i.e.*, by May 1, 2000, at an estimated cost of approximately $30 million.

Performance did not progress as planned. There were numerous delays and substantial increases in cost. After several extensions in delivery schedule, the contract was finally terminated for default on July 17, 2001. Plaintiff's complaint, filed on October 10, 2001, challenges the Thrift Board's termination decision and asks this court to declare the Thrift Board in breach of contract. Defendant has moved for dismissal of plaintiff's complaint for lack of jurisdiction.

## II.

The jurisdiction of the United States Court of Federal Claims is founded on the Tucker Act, 28 U.S.C. § 1491 (2000), which waives sovereign immunity for claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a). This jurisdictional grant is limited, however, by 28 U.S.C. § 2517 (2000), which provides that "every final judgment rendered by the United States Court of Federal Claims against the United States shall be paid out of any general appropriation therefor." Because § 2517 requires our judgments to be paid out of appropriated funds, adherence to this congressional design dictates that a contract claim brought in this court must also be one that in the contemplation of Congress can be satisfied out of appropriated funds. *L'Enfant Plaza Props., Inc. v. United States*, 229 Ct.Cl. 278, 668 F.2d 1211 (Ct.Cl.1982); *Kyer v. United States*, 177 Ct.Cl. 747, 369 F.2d 714 (1966), *cert. denied*, 387 U.S. 929, 87 S.Ct. 2050, 18 L.Ed.2d 990 (1967). Thus, in those situations where Congress has clearly expressed an intention that the funding for an agency's activities be independent of general federal revenues (so-called "non-appropriated fund instrumentalities"), we must decline jurisdiction.

Defendant contends that the Thrift Board is a non-appropriated fund instrumen-

tality. The contention is based chiefly on the text of §§ 8437(d) and (e)(1). Section 8437(e)(1) provides:

Subject to subsection (d) ... sums in the Thrift Savings Fund credited to the account of an employee, Member, former employee, or former Member may not be used for, or diverted to, purposes other than for the exclusive benefit of the employee, Member, former employee, or former Member or his beneficiaries under this subchapter.

5 U.S.C. § 8437(e)(1). Section 8437(d) provides:

Administrative expenses incurred to carry out [the duties assigned to the Thrift Board] shall be paid first out of any sums in the Thrift Savings Fund forfeited under sections 8432(g) [directing forfeiture of the mandatory one-percent agency contribution paid on behalf of non-participating employees who fail to satisfy the minimum required service period] and then out of net earnings in such Fund.

5 U.S.C. § 8437(d).

According to defendant's reading of the statute, these subsections, taken together, demonstrate that the Thrift Board is not granted any appropriations of its own. Instead, the Thrift Board is required to draw its funding from monies that originated as appropriations granted to employer agencies for the payment of contributions on behalf of their employees. Further, defendant argues that such funds, once they have been applied to the purposes for which they initially were made available, lose their character as appropriated funds and become the property of the Fund's participants. Under this reading of the statute then, the Thrift Board's expenses are paid from private funds and not public funds, thus establishing the non-appropriated fund status of the Thrift Board.

We do not accept this argument. Defendant is incorrect in claiming that the expenses identified in § 8437(d) are payable out of private funds. Section 8437(c) specifically provides that the "sums in the Thrift Savings Fund are appropriated and shall remain available without fiscal year limitation ... to pay the administrative expenses of the Federal Retirement Thrift Investment Management System prescribed in [§§ 8471–8479]." Because the government-sourced monies in the Fund originate in an appropriation that specifically earmarks their use for Thrift Board expenses, it cannot be successfully argued that the Thrift Board is drawing on private funds.[1]

This conclusion is not undermined by the fact that § 8437(g) identifies all contributions to and net earnings of the Fund as "sums ... held ... in trust for such employee or Member." Rather, as § 8437(e)(1) makes clear, sums in the Fund that have been credited to the account of an employee or member are subject to certain authorized diversions that include, *inter alia*, payment of the Thrift Board's administrative expenses. By the very terms of the statute, then, the funds held in trust are subject to a condition—the payment of Thrift Board expenses—that attaches to those funds at the instant of their appropriation by Congress. The argument that the Thrift Board's expenses are paid out of private funds is simply wrong.

Despite § 8437(c)'s explicit identification of the Fund's monies as appropriated sums, defendant insists that the section does not express a legislative intent to use congressionally appropriated funds to finance the operations of the Thrift Board. Rather, defendant maintains, the term "appropriated" is used only in a general sense, that is, as an act by which the legislative department des-

---

**1.** Section 8437(c)'s description of the appropriation as one that "shall remain available without fiscal year limitation" identifies the funding as a permanent appropriation rather than as an annual appropriation. 31 U.S.C. § 1301(c)(2) (2000). A permanent appropriation is an appropriation "that is available as the result of previously enacted legislation, remains so until repealed, and does not require current appropriations action by the Congress." United States General Accounting Office, Budget Is-

sues, Inventory of Accounts with Spending Authority and Permanent Appropriations, GAO/AIMD 96-79, at 2 (1996). Additionally, the absence of any specific dollar amount in the appropriation identifies the appropriation as "indefinite" in character, that is, an appropriation that permits the amount to be determined by subsequent circumstances. Office of Management and Budget, Budget of the United States Government, Fiscal Year 2003: Analytical Perspectives 436 (2002).

ignates the application of a particular fund to some general object of government expenditure. According to defendant, § 8437(c) "clearly does not suggest, much less state, that the [Thrift] Board has the use of public funds from the public fisc."

This too is an argument we cannot accept. There is absolutely nothing in the text of the statute to support the contention that the appropriated sums referred to in § 8437(c) involve other than an appropriation of public funds. And in the absence of any such indication, we must assume that the administrative expenses incurred by the Thrift Board are, like government expenses in general, obligations payable out of the general fund in the Treasury.

Our conclusion in this regard is reinforced by the fact that the Thrift Board is required to prepare an annual budget of its "expenses and other items," § 8472(i), that is subject to congressional review. If approved, the budgeted expenses are then included as part of an added obligational authority which, as the

Senate Committee on Appropriations has explained, is "made available each year for [various agencies, including the Thrift Board] under permanent indefinite authority which do not require consideration by the Congress during the annual appropriations process." S.Rep. No. 101–411, at 5 (1990).[2] In other words, governmental activities carried out under the obligational authority of a permanent appropriation, for example, the administration of the Fund, or the rendering of judgments against the United States by this court, involve an expenditure of public monies made available by Congress through laws that do not involve the annual appropriation process. Such monies are, nevertheless, appropriated funds within the meaning of 28 U.S.C. § 2517. Further, consistent with this treatment, the Thrift Board's administrative expenses are included as part of the federal budget, where they are classified under the general heading of "Federal Funds" and then under the more specific subheading of "special funds."[3] Office of

2. Senate Report No. 101–411 (issued by the Senate Committee on Appropriations on H.R. 5241, a bill authorizing appropriations for the Treasury Department, the United States Postal Service, the Executive Office of the President, and certain independent agencies for the fiscal year ending September 30, 1991) reads as follows:

In addition to the new obligational authority recommended in the accompanying bill, additional significant sums are made available each year for the Treasury Department, the Office of Personnel Management, and other independent agencies under permanent indefinite authority which do not require consideration by the Congress during the annual appropriations process.

The principal items in these categories include: payment of interest on the public debt; interest on Internal Revenue Service refunds of income tax payments; and other interest payments on selected accounts handled by the Department of the Treasury ...; repayments of taxes collected by Puerto Rico; payment made when the earned income credit exceeds the taxpayer's tax liability; special claims and damage payments required as a result of judgments against the U.S. Government and payments to the Presidential candidates and their parties ...; payments in connection with the civil service retirement and disability fund ...; and Federal Retirement Thrift Investment Board program expenses....
S.Rep. No. 101–411, at 5 (1990).

The report goes on to note that in addition to the named agencies "whose funds are derived from direct appropriations," there also are other agencies "which operate under authorities which

exempt them from congressional review ... during the annual appropriations process." Among such agencies, the report names the Office of the Comptroller of the Currency whose income, it is further explained, "is derived principally from assessments paid by national banks" and is "exempt from congressional review ... because such assessments are not construed under law to be Government funds." *Id.* at 5–6. Consideration of this report can leave no doubt that, unlike the Comptroller of the Currency, the Thrift Board operates with public funds provided pursuant to a congressional appropriation.

3. The term "federal funds" refers to those monies "which the Government ... collects, owns, and uses solely for its purposes." Comptroller General of the United States, Terms Used in the Budgetary Process 15 (1977). Federal fund accounts are "composed of two classes of receipt accounts—general fund receipt accounts and special fund receipt accounts—and four classes of appropriation (expenditure) of fund accounts—general fund appropriations, special fund appropriations, public enterprise revolving funds, and intragovernmental funds." *Id.* A special fund account in turn may refer to either a federal fund account that is "credited with receipts from specific sources that are earmarked by law for a specific purpose" (special fund receipt account), or a federal fund account that is "established to record appropriated amounts of special fund receipts to be expended for special programs in accordance with specific provisions of law" (special fund appropriation account). *Id.*

Management and Budget, Budget of the United States Government, Fiscal Year 2003: Appendix 1134 (2002).

### III.

For the reasons stated in this opinion, we conclude that the Thrift Board is a governmental agency whose administrative expenses are payable out of public funds made available through a congressional appropriation. Accordingly, defendant's motion to dismiss for lack of jurisdiction is denied.